May it please the Court, my name is Harut Dimijan and I've been working under the supervision of Attorney Caleb Mason in representing petitioner Peter Krzyzanek who is here in the courtroom today. Your Honors, this case involves a physical battery that Peter's spouse willfully condoned and which should have qualified him for protection under the Violence Against Women Act. Because the BIA and IJ failed to properly address this, this Court should remand the case to the BIA. Your Honor, under the Violence Against Women Act, a citizen's spouse is eligible for protection if their, if their, a non-citizen spouse is eligible for protection if their citizen spouse has either battered them or subjected them to extreme cruelty. However, the Act also clarifies that while it, while the abuse generally has to occur by the citizen's spouse, it can also be shown that the in the abuse of acts. A battery is defined in the Act as any act of, or threatened act of violence that results. You said the BIA did not address. I thought, I wasn't sure what you think the BIA didn't address. The BIA did deal with the Wawa argument, right? Yes, Your Honor. Okay, so what is it that the BIA didn't address? What the BIA didn't address is that although the record has evidence of a physical battery against Peter, which the BIA found to be credible evidence, it affirmed the IJ's finding that there was no battery by the spouse. However, what was never addressed was the fact that what occurred was willfully condoned by the spouse. Are we talking about the incident where Yoon's friend threw a drink at Petra and she stood by? Is that the evidence of battery in this case? No, Your Honor. It's actually the incident where her friend, who was a recently released inmate, punched Peter twice in the face. It's noted on the record on page 371 that one night Peter had come home and found his spouse there with her friend who had just been released from jail. And Peter's spouse was telling Peter that she was going to be staying indefinitely. And Peter was not happy to hear this news. And an argument ensued where the friend and the spouse started yelling at Peter. And it escalated to the point that Peter's spouse's friend punched him twice in the face while Peter's spouse continued to yell at Peter, not at her friend telling her to stop. She kept yelling at Peter about it and left with this friend and then disappeared for a few days. Okay. Where is the spouse's involvement? I mean, she didn't do the punching. She didn't encourage the punching, right? There's no evidence of any common plan or scheme. Your Honor, it's true that she didn't do the punching, but her behavior that night was a willful condemnation of the battery that took place. The definition of willful condemnation is an intentional encouragement, and that is what was occurring. What happened that night, Peter even testified to it. What is that to suggest encouragement? I mean, she just, from best I can tell, evidence is, I mean, the best we can make of your client's testimony is that she didn't interfere. Your Honor, actually... Did she say anything like, good job, or punch him again, or anything like that? Your Honor, the record is not clear on what was actually said, but... Well, I'm obviously asking you only about what is in the record. Is there anything in the record to suggest that she said, go ahead, punch him again? Well, what is in the record... I'm asking you a question. Did you hear the question? Yes. And is there anything in the record suggesting that she said, punch him again? Yes, because in the record on page 206, Peter notes that she was on her side. While that doesn't explicitly say that she said, punch him again, it does make clear that she was on the side of the friend that punched him twice in the face. So there is no explicit... I'm sorry, where on page... I'm on page 206. What are you looking at? Sure. So, on page 206 in the record... Line 18 and 19? Yes. Also, it says, her friend attacked me. What did your wife do? She packed and left again. Did your wife intervene? No. And it says in line 18 and 19, well, that time it was more like she was on her side. And so that is an indication that there was a ripple effect. Counsel, it's not cool if I could ask you a question. I read that earlier, that on her side. And I couldn't tell from reading it, if it was conveying anything other than that the wife was on the side, mentally, of her friend. She wanted her jail inmate friend to stay there. But I didn't see what there was that was evidence of condoning in an affirmative sense as opposed to inaction. So the term condoning is in the statute, right? Yes, Your Honor. And so what is there that tells us what condoning means? Does condoning mean there has to be some affirmative act? Or does it mean some mental state of mind? In other words, how do we interpret condoning? Your Honor, there is nothing explicit in the act that speaks to that. And there are actually no cases on point, which is why this case is significant. Willful condemnation can be shown by an act, which it was in this case. Because not only did Peter testify that she was on her side, but his spouse left with this friend and disappeared for two days. So there was a physical manifestation of taking her side. But that occurred afterwards. That occurred as part of this incident. Well, no, it occurred after the punching, right? Or whatever the friend did. I mean, that's quite different from encouraging the actual event. Your Honor, yes, it did occur after the event.  And it's not a normal, common occurrence in a marriage for a person to watch their husband being punched twice in the face and to do nothing about it and to actually continue yelling at the husband, not the person doing the punching. Also, what is before... Can I follow up on that? Can condoning be more or less a ratification after the fact by leaving with the friend as opposed to an instigation before the fact? Yes, Your Honor, it can be. Since the statute is not clear here, an acceptance of what occurred is also a condemnation of the behavior. Here, there's actually both. Because this started as a verbal assault on Peter that escalated from there and was not stopped by the spouse. But the question before this Court is actually the fact that this was not even addressed by the V.I.A. or I.J. They simply said that there was no battery by the spouse. But there should have at least been a discussion of the fact that there may have been a willful condemnation because there's enough evidence in the record to indicate that that was the case. Was this raised before the I.J.? Yes, it was. Or before the V.I.A.? It was raised before both. The I.J. specifically stated that there was no battery by the spouse. Where are you reading from? That is on page 60 in the record. On page 60? Yes. It is in the I.J.'s opinion or decision. Okay. And that will show me that it was raised before the I.J.? Yes, Your Honor. Okay. Where on page 60? On page 60, the first sentence of the second – well, the second paragraph is where it appears. I'm sorry. The second paragraph, it says that first, there is no evidence of physical violence or harm to the respondent by his former spouse. But since this was presented under the Violence Against Women Act, and the I.J. was deciding this case under the Violence Against Women Act. Did you hear my question? Yes, Your Honor. Did this argument that this was a condoning, was this raised before the I.J.? Your Honor, this was raised before the I.J. by raising the Violence Against Women Act. Specifically, this specific argument was not raised before the I.J. Okay, so the answer to my question is not yes, as you said. The answer to my question is no, but it doesn't matter. That's your answer. Correct, Your Honor. Okay, so if the answer is no, you shouldn't say yes. Correct. All right. So was it raised to the BIA? Because really, in this kind of situation, this might be one of those areas where the BIA should interpret the meaning of battery in the regulation rather than a court in the first instance. Yes, Your Honor. It was not raised to the BIA specifically mentioning the willful condemnation. However, this Court has noted in Arsdi v. Holder in 2011 that there is no need to provide a well-developed argument because the goal is to put the BIA on notice so that it has an opportunity to correct an error. Here, the Court has also said that there is no need. What notice is there? I mean, if there's a claim that a spouse abused them and you want to make an argument that she didn't actually do it herself, that she condoned, why isn't this something you have to raise for the agency, give the agency a chance to construe the evidence to respond to that argument? Why isn't that necessary? Why isn't it fair to do so a waiver, which deprives us of jurisdiction to consider the matter? Because, Your Honor, this Court has noted in 2007 in Moreno-Moranti v. Gonzalez that a general contention is acceptable. There is no specific contention is acceptable. Specific statutory arguments are not what are required to put the BIA on notice. And so here, by raising the Violence Against Women Act as the issue, the BIA was already placed on notice. That's your notice argument. That's it. Pardon me? That's it. That's the only argument that was raised that need not have been raised. Just citing the statute is enough. Yes, Your Honor. You don't have anything else. Correct, Your Honor. Citing the statute is enough under the holding of this Court. In Jang v. Ashcroft in 2004, where in that case the petitioner raised the Convention Against Torture, this Court mentioned or said that mentioning the Convention Against Torture in the brief to the BIA was sufficient. Sufficient for what? For putting them on notice of issues that would be raised under the Act. Had the agency addressed the Convention Against Torture in its opinion? It had been addressed, yes. But it had not been specific. The specific claims in that case, such similar to this one, had not all been raised explicitly. But by putting the BIA on notice, this Court found that that was sufficient to exhaust their legal remedy. Let me ask you a different question. This marriage was annulled? I'm sorry? This marriage was annulled? This marriage was annulled. I thought the first marriage was annulled. This one was divorced. As opposed to this marriage with the woman who was the convict initially. That is correct. This marriage ended in a divorce. The first marriage ended in an annulment.  I believe that this marriage ended in a divorce, Your Honor. In the brief time that you have, I would like to explore whether this rises to the level of extreme cruelty. In Hernandez, we said that extreme cruelty exists where tactics of control are intertwined with the threat of harm in order to maintain the perpetrator's dominance through fear. Does your client's factual scenario fit that standard? The BIA said it didn't, right? Does this rise to that level? Yes, Your Honor, it does. I see my time is up. May I? Your time is up. You still have a minute and 13 seconds. Okay. No, this is not moot court. You don't have to ask a question. The judge is asking a question you just answered. You don't have to ask a question. No problem. Yes, Your Honor. This would also rise to the level of extreme cruelty. It's true that there is this case cited, the Hernandez case, which presents a much more extreme example of extreme cruelty. And in that case, the court never said that that was what was required for extreme cruelty. In fact, the court noted that things that might not seem abusive, events that might not be abusive individually, over time can amount to abuse. In this case, the record is full of evidence of verbal arguments. There is a case of economic extortion where Peter's spouse asked him to pay for a car, to spend $3,000 to pay for a car, and specifically told him that if he didn't do it, she would get hurt and he would get hurt. There are also evidence of her throwing things at him, and even though he ducked and they missed, that would still be, at the very least, an attempted battery. And even if the court didn't find that, it would also amount to extreme cruelty when the entire record is taken as a whole. And for those reasons, this court should remand this case. Is there any law that says an attempted battery is battery for purposes of the Violence Against Women's Act, part of the immigration law? Yes, Your Honor. The Act itself actually defines battery as any act or threatened act of violence that results or threatens to result in physical injury or mental injury. So the Act itself allows for the threat of battery, which throwing something at your spouse would qualify as such. Thank you. Can I ask one more question? What does the effect of the divorce have on his ability to raise this basis for, I guess, not being deported or becoming a... I don't know what the relief actually is under this, but how does the fact of the divorce affect his situation? Your Honor, it doesn't affect his situation because the abuse happened while he was legally married, and so it doesn't change the fact that a divorce happened later. The Act allows for that as long as the abuse happened during the marriage. Well, I mean, if he stays here, he wouldn't be living with her anymore, so what would be the purpose of letting him stay? Your Honor, because the Act explicitly calls for people who were abused during the marriage to be able to get protection under this Act. The purpose behind the Act is not... Does it say that? Does it say that people who are previously married? Your Honor, it says that if the abuse occurred during the marriage, then it does qualify under the Act, because the point of the Act is not to force people to stay in the marriage while they're being abused long enough to get relief from the Act. The purpose is to provide them protection to escape that abuse without the fear of having to leave the country. I see. So they get treated as if they're still married? Is that the point? Yes. The goal is not to force someone to choose between deportation and staying in a domestic violence situation. Correct, Your Honor. So what is it? They get treated as if they were still married? It's not so much that they get treated as if they were still married, no. But if this did not exist, then the choice that the abused spouse would have would be to stay in the marriage so that they could still get protection under the Act, or else, if they got a divorce, they would have to leave the country. And that's an untenable situation for an abused spouse to be put in. And so Congress provided for protection even after divorce, as long as the abuse occurred during the marriage. Okay. Thank you. We'll hear from the government. Thank you. Good morning. May it please the Court. Breanna Stripley on behalf of the respondent, the Attorney General of the United States. Your Honors, the record in this case does not compel the conclusion that Petitioner was subjected to spousal abuse at the hands of his United States citizen ex-wife. Rather, the evidence, even taken cumulatively, falls far short of demonstrating that requisite extreme cruelty that is necessary for warranting cancellation of marriage. Notably, Petitioner admitted in his testimony that he was never physically harmed by his ex-wife at any point in time. Rather, Petitioner is claiming that he was abused financially, emotionally, and verbally by his ex-wife, and that this should amount to extreme cruelty. While the alternative sources of abuse could constitute extreme cruelty, as established by Hernandez, the Board correctly determined that the facts of this specific case do not rise to that level. As such, the petition should be delayed. Counsel, what about a thrown coke can, for example? If the wife threw a can of coke at him, and it missed, then it would be true as he testified, that he was never injured by his wife. But would that be, would that attempted battery be enough to bring this within that act? Your Honor, respectfully, that one incident alone would not be enough and sufficient in this case, as the Board properly determined, because it doesn't amount to, in this particular case, the fear by the Petitioner, and that this would amount to that particular extreme cruelty. Wait a minute. His testimony, he was deemed credible. Yes. And he testified that he did have fear. And we have held that a single act of physical abuse is battery per se. So why isn't the answer to that question that he did suffer battery as defined? Your Honor, he said he feared after the argument that they had, which was not in relation to the throwing of the can. That was the trash on the floor and the argument that they had. Then he expressed that he was afraid and went to his mom's house. But it wasn't in relation to that one particular physical incident. Well, if someone was throwing cans at your head, you wouldn't be afraid you were going to be injured by the can flying at your head? On this particular record, it's not even clear that it was thrown at him. And, moreover, it's not throwing cans physically at him. It sounds like at an argument a can was thrown and missed him. That isolated incident should not constitute extreme cruelty warranting this cancellation of removal under the VAWA statute. What about the incident where his wife brought a friend home and she started attacking him physically? Your Honor, the Board found in that instance that Fischner failed to explain that his wife either caused or directed that. That's not the standard. The standard is condoned. How would you define the condone? I would like to take it one step back. In Petitioner's brief on page 26, they cite 61 Federal Register 59 for the willfully condoned portion of this. However, I wasn't able to locate that. I think it may have been a miscite. I think what Petitioner is trying to argue is 61 Federal Register 13601, which was an interim rule with requests for comments. It wasn't a final rule. What made it to the regulations and what is binding is 8 CFR 204.2 C1 and Little Roman numeral 6, which says the qualifying abuse must have been committed by the citizen. This was not committed by the wife. To the extent that, you know, there is evidence that she was on the side of the friend and left afterwards is not enough to show that she directed this violence towards that petitioner. So condoned is not enough? You're saying that reg didn't make it if someone condoned battery, that doesn't come within the act? According to the regulations as they stand, condoned is not in there, and so we must interpret that, that that was not Congress's intent. It fell out. It dropped out of the registration. But the regulations, those weren't promulgated by Congress, right? The regulations are promulgated by the agency. I'm sorry. That's correct. But with regards to the qualifying abuse must have been committed by the citizen, that is in enforceable regulations as opposed to the condoned, which did not make it into the regulations. If a spouse used another person like a cat's paw, that is, they directed the person or, you know, told them what to do, I take it that would definitely be covered. Your Honor, that is a question for another day and would have to be determined by the Attorney General in the first instance. That is not the facts of this particular case, and so the Board didn't address that. The facts of this case is that there's nothing in the record to indicate that the wife at the time, or ex-wife now, instructed or directed the  in the face as she was running out of the house. Well, I I I I gather you're saying it's not before us, but there would be a very strong argument that if there was, I think as Judge Gould suggested, a cat's paw, that there would be a conspiracy and then the actions of each conspirator would be attributed to the other one. So I know you don't want to concede this in a case where it's not raised, but that would be the argument, right? That they collaborated so that the hand that did it may have belonged to the friend, but the mind that directed the hand might have been both of them, right? That would be the argument. Yes, Your Honor. Taking it to the extreme. Was that presented to the BIA? In this case, the only thing that was presented to the BIA was the question that it should be the extension of the friend. The friend should be the extension of. But it wasn't as articulate as you had just mentioned. But the BIA did address that and said that in this particular case Petitioner failed to explain how the incident with his wife's friend was caused or directed by his wife and the Board also found that this fleeting nature of this encounter does not appear to be significant to significantly contribute to an overall pattern of violence or cruelty. So the Board did address it and again, this isn't before this Court, but obviously if it was an extreme where hypothetically speaking someone hired a hitman to you know, a spouse hired a hitman to abuse the other spouse, that you know, although the Attorney General would have to find that in the first instance would likely fall under it. In this case, the extreme cruelty that Petitioner claims amounts and warrants cancellation of removal is in three categories essentially. The verbal abuse, although unpleasant being called profanities during an argument with your spouse is not sufficient verbal abuse to constitute extreme cruelty and the Court in Hernandez addressed this squarely when it said emotional abuse in domestic violence cases is not merely a matter of someone getting angry and calling his partner a few names or cursing. Not all verbal insults between partners are acts of violence. Hernandez also said that non-physical actions rise to the level of domestic violence when tactics of control are intertwined with the threat of harm in order to maintain the perpetrator's dominance and fear as you stated before. That theme of dominance and control is completely absent in this case. This Court also held that because every insult or unhealthy interaction in a relationship does not rise to the level of domestic violence, Congress required a showing of extreme cruelty to ensure that the statute protected against the extreme concept of domestic violence as opposed to just your unkindness. Your Honors, that's the case you have before you today. This is a case where the agency admitted as a tumultuous relationship it is without doubt that both of them had unhealthy interactions and were unkind to each other but that does not rise to the level of extreme cruelty to warrant cancellation of removal. If this Court has any other further questions for me, I'll sum up. Okay. Thank you very much. In sum, Your Honors, this case is evidence of a failed relationship, but a failed relationship does not equate to spousal abuse. Because the record evidence does not compel the finding that Petitioner suffered extreme cruelty at the hands of the United States' citizen ex-wife, this petition for review should be denied. Thank you. Thank you. Case just argued. We stand submitted.
judges: Kozinski, Wardlaw, Gould